UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00289-RGJ-RSE

JOEL TODD MARCUM et al.                                      PLAINTIFFS

VS.

PNC BANK, NATIONAL ASSOCIATION et al.                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Joel Todd Marcum, Carla M. Deddens, and Sandra M. Smithers (collectively "Plaintiffs") and Defendant PNC Bank, National Association ("PNC") each move to compel discovery from Defendant C. Robert Marcum ("Defendant Marcum") related to the ownership and certain transactions involving a family business. (DN 53; DN 54). Defendant Marcum has filed a consolidated response in opposition. (DN 56). Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter has been referred to the undersigned United States Magistrate Judge for resolution of all non-dispositive matters, including discovery issues. (DN 17).

I. Background

Plaintiffs and Defendant Marcum are siblings and the children of Charles Marcum ("Charles") and Bonnie Marcum ("Bonnie"). (DN 1-1, at ¶ 1; DN 19, at ¶ 1). In September 1968, Charles established a trust agreement designating himself as settlor and the Kentucky Trust Company of Louisville, Kentucky (PNC's predecessor) as trustee.[1] (DN 1-1, at ¶ 5). Upon Charles' death, the assets of the trust were to be divided into a marital trust and a residuary trust. (*Id.* at ¶ 6). The marital trust was for Bonnie's benefit, and the residuary trust was to benefit Bonnie,

---

[1] For simplicity, the Court will refer to PNC and all its predecessors as "PNC."

1

Plaintiffs, and Defendant Marcum. (*Id.*). When Charles died, the main asset of the trust was a commercial property. (*Id.* at ¶¶ 10, 12; DN 19, at ¶ 10). The commercial property consisted of industrial buildings out of which Charles and Bonnie ran a family business ("TopWorx"). (DN 1-1, at ¶ 10; DN 19, at ¶ 10). They leased the TopWorx buildings from the trust at below-market rent with PNC, the trustee, as landlord. (DN 1-1, at ¶¶ 10, 12; DN 19, at ¶ 10). Charles was president of TopWorx until his death, after which Defendant Marcum became president. (DN 1-1, at ¶ 11; DN 19, at ¶ 11).

In 2002, unbeknownst to Plaintiffs, Defendant Marcum purchased TopWorx from Bonnie ("the 2002 transaction").[2] (DN 1-1, at ¶ 15; DN 19, at ¶ 15). Plaintiffs allege that, throughout the duration of Defendant Marcum's ownership of TopWorx, he paid below-market rent. (DN 1-1, at ¶¶ 12-13). TopWorx was later sold to Emerson Process Management ("Emerson") in 2008 ("the 2008 transaction"). (*Id.* at ¶ 18; DN 19, at ¶ 18). Plaintiffs also allege that Emerson entered a sales contract with Defendant Marcum agreeing to pay below-market rent and PNC required Defendant Marcum and the other selling shareholders of TopWorx to set up an escrow account to supplement Emerson's annual rent until mid-2011. (DN 1-1, at ¶ 20). Plaintiffs plead that, when Emerson renewed the lease in 2012, it continued to pay below-market rent. (*Id.* at ¶ 21).

Plaintiffs bring a breach of fiduciary claim against PNC.[3] (*Id.* at ¶¶ 43-57). Against Defendant Marcum, Plaintiffs bring a claim for aiding and abetting breach of fiduciary duty. (*Id.* at ¶¶ 58-64).

On April 3, 2023, Plaintiffs served discovery requests on Defendant Marcum, which

---

[2] While Defendant Marcum admits in his Answer that he purchased TopWorx from Bonnie in 2002, (DN 19, at ¶ 15), Plaintiffs' Complaint also alleges that "the National Christian Foundation Charitable Trust apparently owned a fraction of the company" as well. (DN 1-1, at ¶ 15).
[3] Plaintiffs also brought a claim for breach of contract against PNC; however, this claim was later dismissed by the Court. (*See* DN 1-1, at ¶¶ 65-71; DN 16, at PageID # 1162).

included Request for Production of Documents ("RPD") Nos. 3, 4, 6, and 7 and Interrogatory ("INT") No. 4. (DN 53, at PageID # 1436). INT No. 4 sought an explanation as to how Defendant Marcum, his immediate family, and the National Christian Foundation Charitable Trust came to be the sole shareholders in TopWorx before it was sold to Emerson. (DN 53-2, at PageID # 1447). RPD No. 3 requested a copy of any document in his possession, custody, or control that related in any way to the ownership of TopWorx. (*Id.* at PageID # 1450). RPD Nos. 4, 6, and 7 related to any written communications between Defendant Marcum and a representative of PNC, his siblings, or any other person concerning the ownership of TopWorx, the Marcum trusts or their management, the commercial property, or any lease or amendments of that property. (*Id.* at PageID # 1450-51).

On June 23, 2023, PNC served its first set of discovery requests on Defendant Marcum, which included RPD No. 2 and INT Nos. 5-10 and 21. (DN 54, at PageID # 1362). RPD No. 2 also requested a copy of any document in his possession, custody, or control that related in any way to the ownership of TopWorx. (*Id.* at PageID # 1384). Similarly, INT Nos. 5-10 sought information about the 2002 transaction in which Defendant Marcum obtained ownership control of TopWorx. (DN 54-1, at PageID # 1375-78). Finally, INT No. 21 requested clarification as to "why defendant Marcum believes he no longer 'has any discoverable documents within his possession, custody, or control,' as stated in his 'Initial Disclosures'" and a description of all actions he took to preserve electronic and paper documents once Plaintiffs filed their Complaint. (*Id.* at PageID # 1381).

Defendant Marcum generally objected to Plaintiffs' INT No. 4 and RPD Nos. 3 and 7 as well as PNC's INT Nos. 5-10 and RPD No. 2 on the grounds that they were not relevant or likely

3

to lead to discovery of admissible evidence.[4] (*See* DN 53-3, at PageID # 1470-72; DN 54-2, at PageID # 1393-96, 1402). He also objected to Plaintiffs' RPD Nos. 4, 6, and 7, maintaining that they sought documents not within his possession, custody, or control. (*See* DN 53-3, at PageID # 1470-71; DN 56, at PageID # 1508). Although not mentioned in his brief, Defendant Marcum responded to PNC's INT No. 21 with the following:

> Mr. Marcum was not a party to any lease of the Property, and he would have no reason to have received any documents related to the claims in the Complaint. Business records of in [sic] General Equipment & Manufacturing Company, Inc., d/b/a TopWorx were transferred to the purchaser when that company was sold. Mr. Marcum has not destroyed any discoverable documents since the filing of the Complaint in this action.

(DN 54-2, at PageID # 1399-1400).

On September 18, 2023, at Plaintiffs' request, the Court held a telephonic conference to discuss Plaintiffs' and PNC's complaints with Defendant Marcum's objections. (DN 46). After finding that the parties had not spent a considerable amount of time conferring about their issues, the Court ordered them to continue engaging in discussions. (DN 46). The parties jointly submitted a status report indicating that they were unable to resolve their disputes. (DN 47, at PageID # 1275). The Court instructed the parties to meet and confer over a fourteen-day period to discuss their remaining disputes. (DN 48). The parties again reported that they could not reach a resolution. (DN 49, at PageID # 1279).

The Court held another conference on November 6, 2023, and, based on the parties having exhausted reasonable efforts to resolve their disagreements, the Court permitted them to engage in motion practice on the outstanding discovery matters. (DN 51, at PageID # 1285). Shortly thereafter, Plaintiffs and PNC separately filed their Motions to Compel Defendant Marcum to fully

---

[4] Defendant Marcum also responded that "he does not have a present memory of the events sufficient to provide a response" to PNC's INT Nos. 7-9. (DN 54-2, at PageID # 1394-95). Neither PNC nor Defendant Marcum address this response in their briefs.

respond to the discovery requests at issue. (DN 53; DN 54). As Plaintiffs' and PNC's requests were substantially similar, Defendant Marcum filed a consolidated response in opposition. (DN 56).

## II. Legal Standard

Discovery matters are "committed to the sound discretion of the district court." *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) (citations and quotations omitted). Discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts consider several factors including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" a party's claim or defense. *Hadfield v. Newpage Corp.*, No. 5:14-CV-00027-TBR-LLK, 2016 U.S. Dist. LEXIS 12744, at *9 (W.D. Ky. Feb. 3, 2016) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)). In other words, "a request for discovery should be considered to be seeking relevant information if there is any possibility that the information sought may be relevant to the claim or defense of any party in the action." *Wellemeyer v. Trans Union, LLC*, No. 3:20-CV-00814-DJH-LLK, 2022 U.S. Dist. LEXIS 92890, at *6 (W.D. Ky. May 23, 2022) (quoting *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007)).

Federal Rule of Civil Procedure 37 authorizes the filing of a motion to compel discovery when a party fails to answer interrogatories submitted under Rule 33 or respond properly to requests for production of documents under Rule 34. "[A]n evasive or incomplete disclosure,

answer, or response, must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). If the discovery sought appears to be relevant, the party resisting production "has the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Institutional (N.A.), Inc.*, 244 F.R.D. at 380; *see also Polylok, Inc. v. Bear Onsite, LLC*, No. 3:12-CV-00535-DJH-CHL, 2017 U.S. Dist. LEXIS 41960, at *12 (W.D. Ky. Mar. 23, 2017) ("The burden . . . rests with the party objecting to the motion to compel to show in what respects the discovery requests are improper."). When objecting on Rule 26(b)(2)(C) grounds, "the mere statement by a party that the interrogatory was overly broad, burdensome, oppressive, and irrelevant is not adequate to voice a successful objection to an interrogatory." *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, No. 3:13-cv-82-CRS-CHL, 2017 U.S. Dist. LEXIS 175864, at *14 (W.D. Ky. Oct. 24, 2017) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)) (internal quotations omitted). If the court grants a party's motion to compel, Rule 37(a)(5) authorizes the imposition of sanctions on the noncooperative party or their counsel, unless certain exceptions apply. Fed. R. Civ. P. 37(a)(5).

### III. Analysis

#### A. Relevance of the 2002 and 2008 TopWorx Transactions

Plaintiffs argue that their discovery requests are relevant to both of their claims against Defendant Marcum and PNC. (DN 53, at PageID # 1435). Since Plaintiffs allege that PNC breached its fiduciary duty by setting and accepting below-market rent for the commercial property, they argue that "the ownership of TopWorx itself is a vital question—and not just who owned TopWorx, but who knew about that ownership, the terms under which such ownership was acquired (and ultimately sold), and if it was kept secret, the reason behind that secrecy." (*Id.*).

Plaintiffs also contend that the discovery would help them "connect the dots" to support their claim that Defendant Marcum actively encouraged and promoted PNC's breach of fiduciary duty. (DN 57, at PageID # 1524). Because the below-market rent affected the trust's value, Plaintiffs believe they are entitled to information concerning Defendant Marcum's potential involvement with setting the rental price while he was owner of TopWorx and after its sale to Emerson. (*Id.* at PageID # 1520-22). Plaintiffs also "suspect the secrecy with which the [2002] transaction was carried out was to enable [Defendant Marcum] to exploit the 'low rent' arrangement for his own benefit and at the expense of the Trust." (*Id.* at PageID # 1522).

Because PNC alleges that it does not know the specific terms or parties involved in the 2002 and 2008 TopWorx transactions, it argues that its discovery requests are relevant to Plaintiffs' breach of fiduciary duty claim and asserted damages. (DN 54, at PageID # 1371). First, PNC contends that its requests

> [G]o directly to Plaintiffs' allegations that PNC had a duty and breached that duty to be aware of Mr. Marcum's alleged acquisition of TopWorx in 2002, that Mr. Marcum supposedly owned TopWorx and thus was directly benefiting by paying below-market rent to Ms. Marcum's marital trust, and that Mr. Marcum benefited personally from the structure of the 2008 sale of TopWorx to Emerson.

(*Id.* at PageID # 1367-68). PNC argues that it is entitled to full responses to its requests in order to provide evidence about its lack of involvement or awareness of Mr. Marcum's actions and any active concealment of these transactions from PNC. (*Id.* at PageID # 1364). Second, PNC states that information related to the TopWorx transactions is warranted so PNC can test whether Plaintiffs suffered any actual damages and, if so, how they should be calculated. (*Id.* at PageID # 1369). This would include exploring whether Plaintiffs actually benefited from the below-market lease payments based on the way the purchase price was determined. (*Id.* at PageID # 1422).

In his consolidated response, Defendant Marcum argues that Plaintiffs' and PNC's discovery requests are irrelevant because "[t]he wrongful conduct alleged against Mr. Marcum

7

stems from his involvement in the lease renewals, not from his purchase of TopWorx." (DN 56, at PageID # 1509). Defendant Marcum contends that "the only transactions at issue in this case . . . are the lease agreements and extensions between PNC as the Trustee and TopWorx or Emerson as the tenants." (*Id.*). Rather, Defendant Marcum claims that the other parties are undertaking a "fishing expedition" for "information not related to the claims in the complaint but related to family affairs that occurred decades ago." (*Id.* at PageID # 1507).

The relevancy of Plaintiffs' and PNC's discovery requests is apparent. In her decision denying Defendant Marcum's Motion to Dismiss, the District Judge discussed how Plaintiffs' claim against Defendant Marcum relates to his ownership and sale of TopWorx. (*See* DN 16, at PageID # 1163-64). As both PNC and Plaintiffs highlight in their motions, the District Judge determined that "Plaintiffs have alleged that Marcum aided and abetted breach of fiduciary duty by (among other things) *transferring Bonnie's interest in TopWorx to himself* and then in the *sale of TopWorx*. Plaintiffs also allege that Marcum abused his confidential relationship with them by concealing these actions[.]" (*Id.* (citing DN 1-1, at PageID # 447-48)) (emphasis added). Later in her opinion, the District Judge found that "Plaintiffs allege that Marcum gave PNC substantial assistance or encouragement when 'PNC effectively turned over to Rob many of the duties it assumed when it agreed to serve as Trustee, as it allowed him to say how the Property should be leased, to whom, and at what rates.'" (DN 16, at PageID # 1165 (citing DN 1-1, at PageID # 458-59)). Further, Plaintiffs claim that "PNC would have had to pay more attention to the trust's assets and how they were being handled, had not Rob effectively taken over and 'managed' the property for his own benefit and to the detriment of the other beneficiaries." (DN 1-1, at ¶ 61). Thus, the facts in Plaintiffs' Complaint demonstrate that discovery related to Defendant Marcum's ownership and sale of TopWorx bears directly on both of Plaintiffs' claims and PNC's defense.

8

Defendant Marcum's argument that the discovery requests "are not related to any claim made in the Complaint" is unfounded. (DN 56, at PageID # 1507).

Moreover, none of Defendant Marcum's additional points are compelling. Defendant Marcum argues that, because he was not a trustee, "he had no obligation to notify his siblings of these lease agreements or any changes in the company ownership." (DN 56, at PageID # 1510). However, Defendant Marcum confuses Plaintiffs' claims. Plaintiffs allege that Defendant Marcum aided and abetted PNC's breach of fiduciary duty, not breached a fiduciary duty himself. That Defendant Marcum was a beneficiary of the trust did not permit him to allegedly assist PNC in its breach of fiduciary duty to his benefit. Defendant Marcum also contends that the discovery requests are irrelevant because "the Trust never had any ownership in TopWorx, and the sale had no financial consequences on it." (*Id.* at PageID # 1509). But neither the Court nor the other parties need to accept that there were no financial consequences based on Defendant Marcum's word alone. Indeed, the escrow agreement, which was signed by Defendant Marcum, suggests that the 2008 transaction and the price of Emerson's rent were more intertwined than Defendant Marcum lets on. (*See* DN 6-1, at PageID # 344-51). Moreover, Defendant Marcum twice alleges in his brief that he "played no role in negotiating lease agreements" after the sale to Emerson. (DN 56, at PageID # 1510-11). Yet, Plaintiffs attached to its reply a document entitled "Third Amendment to Industrial Lease" which Defendant Marcum signed on PNC's behalf on April 25, 2011 and which appears to continue the below-market rent structure for Emerson. (DN 57-7). These documents lead the Court to believe that information relating to Defendant Marcum's ownership and sale of TopWorx is relevant to Plaintiffs' claims against Defendant Marcum and PNC.

Relying on precedential authority, which makes clear that the Rule 26(b)(1) relevancy standard is a "low threshold," *Mitchell v. Universal Music Grp. Inc.*, No. 3:15-CV-174-JHM, 2018

U.S. Dist. LEXIS 54433, at *10 (W.D. Ky. Mar. 30, 2018), the Court finds that Defendant Marcum has not met his burden of demonstrating that the material sought is irrelevant.

### B. Possession of Responsive Documents

An issue with respect to Plaintiffs' RPD Nos. 4, 6, and 7 is whether Defendant Marcum possesses responsive documents. Neither Plaintiffs nor Defendant Marcum discuss this objection at length in their briefs. Plaintiffs doubt that Defendant Marcum does not have any responsive documents, stating that "even if Rob Marcum no longer has any related documents in his *possession*, they surely exist somewhere and should be produced if they are still in his *control*." (DN 57, at PageID # 1516). Defendant Marcum maintains, however, that most of the documents related to the sale and transfer of TopWorx are not within his possession, custody, or control. (DN 56, at PageID # 1508).

"The federal courts are often confronted with a party's complaint that its opponent must have documents that it claims not to have." *Schnatter v. 247 Grp., LLC*, No. 3:20-CV-00003-BJB-CHL, 2021 U.S. Dist. LEXIS 220958, at *10 (W.D. Ky. Nov. 15, 2021) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 219 F.R.D. 12, 17 (D.D.C. 2003)). However, "[s]uch an assertion is insufficient to warrant a motion to compel." *Id.* (quoting *Averill v. Gleaner Life Ins. Soc'y*, 626 F. Supp. 2d 756, 766 (N.D. Ohio 2009)).

Defendant Marcum's indication that *most* of the documents relating to the 2002 and 2008 transactions are not in his possession, custody, or control suggests that he has yet to produce some responsive documents to Plaintiffs. Accordingly, the Court orders Defendant Marcum to produce responsive documents to the extent that they are, in fact, within his possession, custody, or control. If Defendant Marcum still maintains that he does not possess any responsive documents, the Court instructs him to serve an amended response on Plaintiffs containing a sworn declaration that, after

reasonable inquiry, he has produced all documents within his possession, custody, or control that are responsive to Plaintiffs' RPD Nos. 4, 6, and 7.

### C. Rule 37 Sanctions

Plaintiffs and PNC have also moved for Rule 37 sanctions against Defendant Marcum. Rule 37 allows the court to award sanctions when a party, properly served with interrogatories or requests for production, "fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). The court may impose the type of sanctions described in Rule 37(b)(2)(A)(i)-(iv), which includes rendering a default judgment, or it may also require a party failing to act, the attorney advising that party, or both to pay reasonable expenses, including attorney's fees caused by the failure. Fed. R. Civ. P. 37(d)(3). Conversely, the target of the sanctions motion may avoid responsibility by showing that "the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* The key component of the analysis is the degree to which the party's withholding of his discovery responses is in good faith. *Wellemeyer*, 2022 U.S. Dist. LEXIS 92890, at *20-21.

Both Plaintiffs and PNC request an award of reasonable expenses, including attorney's fees. (DN 53, at PageID # 1440; DN 54, at PageID # 1371). While Plaintiffs concede that "courts have not been quick to award expenses," they maintain that such an award is warranted here because they "have had to go to considerable effort and expense to pursue this discovery[.]" (DN 56, at PageID # 1439-40). In response, Defendant Marcum argues that he "has complied with his discovery obligations[.]" (DN 56, at PageID 1513). He asserts that "his position is substantially justified[,]" sanctions would be unjust "as Mr. Marcum has consistently worked to respond to discovery requests from both parties[,]" and "[h]e is not acting in bad faith or attempting to prolong discovery or the case." (*Id.* at PageID # 1514).

11

The Court finds that the circumstances do not warrant an award of costs. Defendant Marcum has presented a cognizable legal basis in this genuine discovery dispute. Given that neither Plaintiffs nor PNC have alleged any deliberate attempt to conceal or provided evidence of any intentionally deceitful action, this Court finds no basis to conclude that Defendant Marcum has acted in bad faith with respect to the discovery at issue. For these reasons, Plaintiffs' and PNC's motions for sanctions are denied.

ORDER

**IT IS HEREBY ORDERED** that Plaintiffs' Motions to Compel (DN 53) and PNC's Motion to Compel (DN 54) are **GRANTED IN PART** and **DENIED IN PART**.

Specifically, **IT IS HEREBY ORDERED** as follows:

(1) Defendant Marcum shall supplement his responses to Plaintiffs' INT No. 4 and PNC's INT Nos. 5-10 and 21.

(2) Defendant Marcum shall produce all documents and communications in his possession, custody, or control that are responsive to Plaintiffs' RPD Nos. 3, 4, 6, and 7 and PNC's RPD No. 2.

(3) If, after reasonable efforts, Defendant Marcum is unable to locate any responsive documents, he must serve an amended response on Plaintiffs and/or PNC containing a sworn declaration describing with specificity the details of his efforts to locate the documents and declaring that, after making reasonable efforts, he cannot locate any documents within his possession, custody, or control that are responsive to Plaintiffs' or PNC's requests for production of documents.

(4) Defendant Marcum shall have **fourteen (14) days** from the issuance of this Order to comply with its directives.

(5) Plaintiffs' and PNC's Motions for Sanctions are **DENIED**.

Copies:      Counsel of Record

Regina S. Edwards, Magistrate Judge
United States District Court

March 12, 2024

13