UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOEL TODD MARCUM, *et al.*  Plaintiffs

v.  Civil Action No. 3:21-cv-289-RGJ

PNC BANK, NATIONAL ASSOCIATION, *et al.*  Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant Robert Marcum ("Defendant Marcum") objects [DE 62] to the Magistrate Judge's Order [DE 61] granting two motions to compel discovery. [DE 53; DE 54]. No party filed a response and the time to do so has passed. LR 7.1 ("Unless otherwise ordered by the Court, a party opposing a motion must file a response within 21 days of service of the motion."). For the reasons below, the objection is **OVERRULED**.

## I.  BACKGROUND

Plaintiffs Joel Todd Marcum, Carla M. Deddens, and Sandra M. Smithers (collectively, "Plaintiffs") are the siblings of Defendant Marcum. [DE 1-1 at ¶ 1; DE 19 at ¶ 1]. Their parents are Charles R. Marcum ("Charles") and Bonnie Marcum ("Bonnie"). [*Id.*]. This litigation centers on a trust established by Charles in 1968. [DE 1-1 at ¶ 5]. Charles designated Kentucky Trust Company of Louisville, Kentucky (a predecessor of Defendant PNC Bank, National Association ("PNC")) as trustee and himself as settlor. [*Id.*]. When Charles died, the assets of the trust were to be divided into a marital trust for Bonnie's benefit and a residuary trust for Bonnie, Plaintiffs, and Defendant Marcum's benefit. [*Id.* at ¶ 6]. The main asset of the trust was a commercial property which Charles and Bonnie used for the family business—TopWorx. [*Id.* at ¶ 10; DE 19 at ¶ 10]. Defendant Marcum succeeded Charles as president of TopWorx after his death, while

1

Bonnie retained ownership of TopWorx. [DE 1-1 at ¶ 11; DE 19 at ¶ 11]. TopWorx leased the commercial property from the trust at a significantly below-market rate. [DE 1-1 at ¶¶ 10, 12; DE 19 at ¶ 10]. Without Plaintiffs' knowledge, Defendant Marcum purchased TopWorx from Bonnie in 2002 and continued to pay a below-market rate to the trust until TopWorx was sold to Emerson Process Management ("Emerson") in 2008. [DE 1-1 at ¶¶ 12–13, 15, 18; DE 19 at ¶¶ 15, 18]. Importantly, Plaintiffs allege that the sales contract between Emerson and Defendant Marcum contained an agreement to pay below-market rent and that the selling shareholders of TopWorx set up an escrow account to supplement this rent until 2011 at the direction of PNC. [*Id.* at ¶¶ 20–21]. Emerson continued to pay a below-market rate when it renewed its lease in 2012. [*Id.*].

Plaintiffs and PNC both served discovery requests on Defendant Marcum relating to the ownership of TopWorx. [DE 53 at 1436; DE 54 at 1362]. Defendant Marcum objected to the requests on the grounds that (1) they were not relevant or likely to lead to the discovery of admissible evidence or (2) he did not have the documents requested. [DE 53-3 at 1470–72; DE 54-2 at 1393–96, 1402; DE 56 at 1508]. After a telephonic conference with the Magistrate Judge and multiple attempts to resolve the dispute, [DE 46; DE 47; DE 48; DE 49], the Magistrate Judge allowed the parties to file motions to compel. [DE 53; DE 54]. Defendant Marcum opposed the motion. [DE 56]. On March 13, 2024, the Magistrate Judge granted the motions to compel.[1] [DE 61]. Defendant Marcum timely objected to the Order. [DE 62].

## II.   STANDARD OF REVIEW

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "The Court has considerable discretion when handling discovery matters, such as

---

[1] The Court referred this action to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A) for resolution of all non-dispositive matters, including discovery. [DE 17].

deciding if information might be relevant." *Hadfield v. Newpage Corp.*, No. 5:14-CV-27-TBR-LLK, 2016 WL 427924, at *3 (W.D. Ky. Feb. 3, 2016) (citing *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008)). The proper scope of discovery is determined by "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information "need not be admissible in evidence to be discoverable," *id.*, and relevance should be "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Hadfield*, 2016 WL 427924, at *3 (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Wellemeyer v. Trans Union, LLC*, No. 3:20-CV-814-DJH-LLK, 2022 U.S. Dist. LEXIS 92890, at *6 (W.D. Ky. May 23, 2022) (quoting *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007)) ("[A] request for discovery should be considered to be seeking relevant information if there is any possibility that the information sought may be relevant to the claim or defense of any party in the action."). When parties cannot agree on what material is discoverable, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37. "The movant of a motion to compel bears the burden of demonstrating relevance, but it is a low bar, as relevance is 'construed broadly.'" *Blankenship v. Shelter Gen. Ins. Co.*, No. 3:19-CV-710-RGJ-LLK, 2021 WL 4352808, at *1 (W.D. Ky. Apr. 30, 2021) (quoting *Hadfield*, 2016 WL 427924, at *3).

A party may object to a magistrate judge's non-dispositive order within fourteen days. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). When a party timely objects to a magistrate judge's non-dispositive order, this Court "has the authority to 'reconsider' the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (citing

28 U.S.C. § 636(b)(1)(A)). Under that standard, a magistrate judge's determination must be affirmed unless the objecting party shows that the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) (implementing statutory directive). Factual findings are reviewed under the clearly erroneous standard, while legal conclusions are reviewed under the contrary to law standard. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd per curiam*, 19 F.3d 1432 (6th Cir. 1994) (unpublished table disposition) (internal quotation marks and citations omitted). A legal conclusion is contrary to law if it contradicts or ignores applicable precepts of law. *Id.* (citing *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983)).

### III. DISCUSSION

In her order, the Magistrate Judge determined that both TopWorx transactions—the 2002 transfer from Bonnie to Defendant Marcum and the 2008 sale to Emerson—were relevant to "Plaintiffs' claims and PNC's defense," rejecting Defendant Marcum's argument that they were irrelevant to claims in the complaint as "unfounded."[2] [DE 61 at 1566–67]. The Magistrate Judge reasoned that because Plaintiffs allege that allowing TopWorx to pay below-market rate rent for the commercial property was part of PNC's breach of fiduciary duty (which Plaintiffs allege Defendant Marcum aided and abetted), the ownership of TopWorx at that time was relevant to

---

[2] The Magistrate Judge also determined Defendant Marcum's assertion that "*most* of the documents relating to the 2002 and 2008 transactions are not in his possession, custody, or control suggests that he has yet to produce some responsive documents[.]" [DE 61 at 1568 (emphasis in original)]. Thus, she ordered him to produce them, allowing him the option to "serve an amended response on Plaintiffs containing a sworn declaration that, after reasonable inquiry, he has produced all [responsive documents]" if he "still maintains that he does not possess any responsive documents" to Request for Production of Documents Nos. 4, 6, and 7. [DE 61 at 1568–69]. And finally, the Magistrate Judge found that "the circumstances [did] not warrant an award of costs" because Defendant Marcum "presented a cognizable legal basis in this genuine discovery dispute" and no party "alleged any deliberate attempt to conceal or provided evidence of any intentionally deceitful action[.]" [DE 61 at 1570]. Defendant Marcum does not challenge these portions of the Magistrate Judge's order, only objecting to the relevancy and scope of the discovery material sought.

4

their claims. Defendant Marcum asserts in his objection that the Magistrate Judge "fails to properly assess the legal elements of Plaintiffs' claims[.]" [DE 62 at 1575].

"A claim for breach of fiduciary duty requires that a plaintiff allege that '(1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach.'" *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. App. 2016) (quoting *Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 665 (E.D. Ky. 2009)). Prevailing on a claim of aiding and abetting a breach of fiduciary duty requires proving: "(1) the existence and breach of a fiduciary relationship; (2) the defendant gave the breaching party 'substantial assistance or encouragement' in effectuating the breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty." *Id.* (citing *Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 666 (6th Cir. 2010)). Defendant Marcum asserts that the Magistrate Judge focused on "factual 'dicta'" because there is "no nexus between the TopWorx transfer and sale and PNC's alleged failure to obtain Fair Market Value" from TopWorx. [DE 62 at 1575].

This Court has already implicitly acknowledged that the ownership and sale of TopWorx are relevant to Plaintiffs' claims. When discussing whether the aiding and abetting claim was time-barred in a previous order, the Court explained that the allegation "that Marcum aided and abetted breach of fiduciary duty by (among other things) transferring Bonnie's interest in TopWorx to himself and then in the sale of TopWorx" was one of the factual allegations "plausibly suggest[ing] that Marcum abused the confidential relationship between the Siblings and concealed the cause of action from the Plaintiffs until the time of Bonnie's death." [DE 16 at 1163–64 (citing DE 1-1 at 447–48)]. And when discussing whether the complaint failed to state a claim for aiding and abetting, the Court noted that "Plaintiffs allege that Marcum gave PNC substantial assistance

5

or encouragement when 'PNC effectively turned over to [Defendant Marcum] many of the duties it assumed when it agreed to serve as Trustee, as it allowed him to say how the Property should be leased, to whom, and at what rates.'" [*Id.* at 1165 (citing DE 1-1 at 458–59)]. In objecting to the Magistrate Judge's Order, Defendant Marcum argues that "this claim concerns the Property, *not* TopWorx" and that because the Trust did not own TopWorx, its sale was "immaterial to PNC's fiduciary responsibilities." [DE 62 at 1576 (emphasis in original)]. But the ownership of TopWorx relates directly to who benefitted from the favorable rate to lease the Trust's commercial property, as well as Defendant Marcum's potential control and influence over TopWorx and the terms of its sale. As the Magistrate Judge noted, "Plaintiffs allege that Defendant Marcum aided and abetted PNC's breach of fiduciary duty, not breached a fiduciary duty himself," and the fact that he "was a beneficiary of the trust did not permit him" to do so for his benefit. [DE 61 at 1567]. Thus, it is difficult to imagine how Defendant Marcum's involvement with TopWorx and the financial consequences of the TopWorx transactions would not "have anything to do with the claims," as he asserts. [DE 56 at 1509].

Additionally, the Magistrate Judge doubted Defendant Marcum's assertion that there were no financial consequences to the Trust, explaining that the escrow agreement suggested that "the 2008 transaction and the price of Emerson's rent were more intertwined than Defendant Marcum lets on." [DE 61 at 1567 (citing DE 6-1 at 344–51)]. She also did not credit his assertion that he "'played no role in negotiating lease agreements' after the sale to Emerson" because he signed the "Third Amendment to Industrial Lease" on PNC's behalf, and this agreement appeared to "continue the below-market rent structure for Emerson." [*Id.* at 1567 (quoting DE 56 at 1510–11 and citing DE 57-7)]. Defendant Marcum acknowledges in his Objection that "this Court does not have to take Mr. Marcum's word that there were no financial consequences to the TopWorx

6

transaction," but argues that "it makes no difference . . . because Plaintiffs did not stand to benefit one way or the other." [DE 62 at 1576]. The Court disagrees. The sale of TopWorx was not "immaterial to PNC's fiduciary responsibilities," [*id.*], because its ownership and the terms of its sale directly implicated how Trust assets were used and who they benefitted—as the Magistrate Judge concluded. [DE 61 at 1567 ("These documents lead the Court to believe that information relating to Defendant Marcum's ownership and sale of TopWorx is relevant to Plaintiffs' claims against Defendant Marcum and PNC.")]. Defendant Marcum argues that the "true purpose" of seeking this discovery is not relevant to Plaintiffs' claims or PNC's defenses but is "merely an attempt to delve into long-past familial grievances." [DE 62 at 1576–77]. While the Court is sympathetic that this information may be a source of familial tension, that does not make it any less relevant. *See Andrews v. Raphaelson*, No. 5:09-CV-077-JBC, 2009 WL 1211136, at *4 (E.D. Ky. Apr. 30, 2009) (explaining that "the fact that sensitive information is involved in litigation gives a party neither an absolute nor automatic right to have the discovery process hindered" and "[c]ourts must balance concerns about disclosing information that is embarrassing or prejudicial against the liberal federal principles favoring disclosure") (citations and internal quotation marks omitted).

The Court finds that the Magistrate Judge's decision to grant the motions to compel discovery was not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Instead, even though relevancy is "construed broadly" and is a "low bar" to clear, *Blankenship*, 2021 WL 4352808, at *1 (quoting *Hadfield*, 2016 WL 427924, at *3), the Magistrate Judge's decision demonstrates that information related to the sale and ownership of TopWorx relates closely to the elements of aiding and abetting a breach of fiduciary duty. *See Insight Kentucky Partners II, L.P.*, 514 S.W.3d at 546 (Ky. App. 2016). At minimum, that information could reasonably "lead to

other matters that could bear on" Plaintiffs' claims or PNC's defenses. *Hadfield*, 2016 WL 427924, at *3 (quoting *Oppenheimer Fund*, 437 U.S. at 351). Accordingly, the Court finds no basis under its "limited standard of review," *Massey*, 7 F.3d at 509, to disturb any of the Magistrate Judge's legal conclusions as "contrary to law" or factual conclusions as "clearly erroneous." *Gandee*, 785 F. Supp. at 686.

## IV. CONCLUSION

For the reasons explained, and the Court being otherwise sufficient advised, Defendant Robert Marcum's objection [DE 62] to the Magistrate Judge's order [DE 61] is **OVERRULED**.

Rebecca Grady Jennings, District Judge
United States District Court

June 14, 2024

cc: counsel of record