UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOEL TODD MARCUM, *et al.*      Plaintiffs

v.      Case No. 3:21-cv-289-RGJ-RSE

PNC BANK, NATIONAL ASSOCIATION
and C. ROBERT MARCUM,      Defendants

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Plaintiffs Joel Todd Marcum, Carla M. Deddens, and Sandra M. Smithers (collectively "Plaintiffs") move under Rule 15(a)(2) for leave to amend their complaint. [DE 81]. Defendant C. Robert Marcum ("Marcum") responded in opposition, [DE 90], and seeks leave to exceed the page limit with his response brief, [DE 88]. Plaintiffs replied. [DE 93]. Additionally, both Marcum and Plaintiffs separately move to seal certain court records. [DE 89; DE 92]. Defendant PNC Bank, National Association ("PNC") has not responded to Plaintiffs' motion. *See* LR 7.1(c). For the following reasons, Plaintiffs' motion to amend [DE 81] is **GRANTED**. Marcum's motion to exceed the page limit [DE 88] is **GRANTED**. The parties' motions to seal [DE 89; DE 92] are **DENIED**.

**I. BACKGROUND**

Plaintiffs and Marcum are the adult children of Charles Marcum ("Charles") and Bonnie Marcum ("Bonnie"). [DE 1-1 at 445]. In 1968, Charles established a trust and designated PNC's predecessor as trustee. [*Id.* at 445–46]. The trust's primary asset was a commercial property where "TopWorx," the family business, was located. [*Id.* at 446]. Upon Charles's death, the trust's assets were to benefit both Bonnie and the couple's children—Plaintiffs and Marcum. [*Id.*].

According to the original complaint, when Charles died in 1976, Marcum succeeded him as TopWorx's president. [*Id.* at 446–47]. Bonnie initially retained ownership of the business, which leased the property from the trust, though at a significantly below-market rate. [*Id.*]. After Marcum purchased Bonnie's ownership of TopWorx in 2002, the company continued paying below-market rent. [*Id.* at 447]. Marcum sold TopWorx in 2008, and the business's successor likewise paid below-market rent to the trust. [*Id.* at 448]. Plaintiffs allege that Marcum secured an "inflated sale price" to his own benefit, offset for the buyer by below-market rent to the estate beneficiaries' detriment. [*Id.* at 448–49]. Bonnie passed away in 2016. [*Id.* at 448–49].

After Plaintiffs filed suit in April 2021, PNC and Marcum jointly removed this action, citing diversity jurisdiction. [DE 1 at 1–2]. The original complaint asserted breach of fiduciary duty and breach of contract claims against PNC. [DE 1-1 at 454–60]. Plaintiffs also asserted aiding and abetting breach of fiduciary duty against Marcum. [*Id.* at 458–59]. On PNC's motion, the Court dismissed the breach-of-contract claim. [DE 16 at 1162; *see also* DE 28]. In 2023, Plaintiffs and PNC separately moved to compel written discovery from Marcum. The Magistrate Judge granted those motions in part, [DE 61], and the Court overruled Marcum's objections to the Magistrate Judge's order. [DE 67].

Plaintiffs move to amend the complaint. [DE 81]. The proposed amended complaint incorporates the original complaint, *cf.* Fed. R. Civ. P. 10(c), and adds a direct claim against Marcum for "breach of fiduciary duty." [DE 81-4 at 1638]. According to Plaintiffs' motion and the amended complaint, "facts recently unearthed" in party and nonparty discovery, [DE 81-1 at 1619], show that "Marcum had a much more active role in damaging the Plaintiffs than they originally knew." [DE 81-4 1639]. The new allegations center on three issues. First, Plaintiffs allege in more detail that Marcum wrongfully obtained ownership of TopWorx from Bonnie in

2

2002. [*Id.* at 1639–40]. They further allege that payment for Bonnie's ownership interest "was not fully paid to [her], was wrongfully diverted, and thus was not accounted for in her Estate when she died in 2016." [*Id.* at 1641]. Second, Plaintiffs note that "Rob Marcum was appointed fiduciary of Bonnie Marcum's Estate pursuant to her Will. . ." and that there is no evidence that Marcum distributed the diverted value of the Promissory Notes from the sale of Bonnie's interest in TopWorx to the Plaintiffs as beneficiaries of Bonnie's Estate. [*Id.* at 1643]. This is interpreted by Marcum as a claim of misadministration of Bonnie's Estate. [DE 90 at 1761-62]. Third, Plaintiffs allege in more detail that after selling TopWorx in 2008, Marcum "pretended to act as Trustee of the Trusts, something he never was," by keeping the buyer's rent below-market and effectively acting as landlord. [*Id.* at 1644 (emphasis removed)]. Plaintiffs admit that they "trusted" Marcum and did not "demand a detailed accounting of [his] business activities," but they also allege that he "made repeated efforts to keep them in the dark" and acted "secretly." [*Id.* at 1645].

The deadline for motions to amend pleadings did not pass until May 2025, two months after Plaintiffs moved to amend their complaint. [DE 79 at 1607]. Discovery is ongoing. [*Id.*].

## II. STANDARD

At this stage of a case, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). "A proposed amendment is futile if [it] could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. Of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quotation marks omitted). Whether to grant leave is generally "within the discretion of the

trial court." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995). However, a denial for futility will be reviewed de novo. *Brumablough*, 427 F.3d at 1001.

### III. ANALYSIS

#### A. Motion to Amend

Plaintiffs' motion asserts that amendment is appropriate because "with a year of discovery remaining and no deposition as yet taken, there can be no prejudice to either Defendant." [DE 81 at 1616]. Additionally, Plaintiffs assert that the amendments all "relate to the claims already asserted" and the facts were only recently learned through discovery; thus, there has been no undue delay. [*Id.*]. Finally, Plaintiffs state that "the amendment would not be futile." [*Id.*]. Marcum's response brief argues undue delay, undue prejudice, and futility. *See Brumablough*, 427 F.3d at 1001.

##### 1. Undue Delay

Marcum asserts that "the Court should deny the motion to amend because it is brought unconscionably late, four years after the litigation began." [DE 90 at 1768]. He cites *Wade v. Knoxville Utilities Board* for the proposition that "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." 259 F.3d 452, 459 (6th Cir. 2001). But this case does not resemble *Wade*. In *Wade*, the plaintiff sought to amend his complaint "about three weeks before the dispositive motion cut-off date." *Id.* at 458. Here, as Plaintiffs point out, they filed their motion months before the deadline to do so. [DE 81-1 at 1619]. And the dispositive motion deadline was over a year away and has not passed. [DE 79]. These circumstances do not suggest undue delay. *See Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 636 (W.D. Ky. 2018) (noting that "[c]ourts typically find undue delay . . . in cases where discovery has closed and dispositive motions deadlines have passed").

4

Marcum also asserts that "nothing in discovery . . . justifies the Plaintiffs' delay." [DE 90 at 1769]. But as Plaintiffs' motion explains, some facts supporting the amended complaint were discovered "in the fall of 2024" through nonparty subpoenas. [DE 81-1 at 1619–20]. Several of those documents are attached as exhibits to the amended complaint. [*See id.* at 1620]. As for party discovery, Plaintiffs note that Marcum produced documents as recently as July 2024, some of them only after being compelled by the Court. [DE 93 at 1781]. They also note that PNC produced documents as recently as April 2025. [*Id.*]. As a result, progress in discovery led Plaintiffs to seek amendment. *Compare with Wade*, 259 F.3d at 459 (noting that the plaintiff "offered no explanation or justification for having waited" so long before seeking leave to amend).

"Delay by itself is not sufficient reason to deny a motion to amend." *Id.* at 458–59 (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)). The question is whether there has been "*undue* delay in filing." *See Brumablough*, 427 F.3d at 1001 (emphasis added). In short, Plaintiffs did not unduly delay before moving to amend their complaint.

        2.     <u>Undue Prejudice</u>

Marcum also alleges "undue prejudice" in that "the Plaintiffs' delay . . . has caused the Defendants additional expense, frustration at the slow pace of litigation, and additional difficulties defending this meritless litigation because of the passage of time." [DE 90 at 1769; *see Brumablough*, 427 F.3d at 1001]. "[A]n undue prejudice inquiry asks if the party opposing the motion to amend 'would have done anything differently' had the claim been presented in earlier pleadings." *Davis v. Therm-O-Disc, Inc.*, 791 F. Supp. 693, 695 (N.D. Ohio 1992) (quoting *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990)); *see also Grant v. Target Corp.*, 281 F.R.D. 299, 303 (S.D. Ohio 2012) (asking "whether an amendment . . . would make the case unduly complex and confusing").

When Plaintiffs filed their motion, the parties had conducted only written discovery. [DE 81-1 at 1620]. Since then, depositions have begun. [DE 93 at 1783]. Under the current scheduling order, discovery will continue for several months. [DE 79]. Marcum still has time to conduct any follow-up discovery prompted by Plaintiffs' amended complaint. Therefore, the Court cannot conclude that Marcum would have defended this case differently had he received the amended complaint earlier. *See Gen. Elec.*, 916 F.2d at 1130. The likely expenses and obligations noted in Marcum's response are inherent in defending against any claim. [*See* DE 90 at 1769]. And the burdens of additional discovery do not, in and of themselves, constitute undue prejudice. *United States v. Marsten Apartments, Inc.*, 175 F.R.D. 257, 264 (E.D. Mich. 1997). Defending against Plaintiffs' amended complaint will not unduly prejudice Marcum.

        3.    <u>Futility of Amendment</u>

Amendment is futile if the amended complaint could not survive a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see Sims v. Atrium Med. Corp.*, 349 F. Supp. 3d 628, 637 (W.D. Ky. 2018); *accord Riverview Health*, 601 F.3d at 512. The amended complaint need only state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord* Fed. R. Civ. P. 8(a). The Court must construe the amended complaint in the light most favorable to Plaintiffs, accept its allegations as true, and draw all reasonable inferences in Plaintiffs' favor. *See Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020). As the party opposing amendment, it is Marcum's burden to show that amendment would be futile. *See Williams v. Barton Malow Co.*, 581 F. Supp. 3d 923, 928 (N.D. Ohio 2022); *cf. In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 859 (6th Cir. 2023) (Rule 12(b)(6)). Marcum asserts futility on each issue related to Plaintiffs claim for breach of fiduciary duty: (1) the sale of Bonnie's interest in TopWorx to Marcum and his children; (2) Marcum's alleged

6

misadministration of Bonnie's Estate in not accounting for the Promissory Notes from the sale of Bonnie's interest in TopWorx in the Estate's distribution to Plaintiffs; and (3) the below-market rent that was paid from TopWorx to the trust for lease of Trust property. [DE 81-4 at 1639–40, 1644]. The Court will address these issues in turn.

### a.    *Marcum's Purchase Of Bonnie's Topworx Stock*

Regarding his purchase of TopWorx in 2002, Marcum argues that amendment would be futile because the Court lacks jurisdiction; Plaintiffs lack standing; the fiduciary-duty claim is time-barred; and he owed no duty to Plaintiffs.

#### i.    *Article III Standing*

Marcum asserts that "Plaintiffs lack standing to complain about [Marcum's] purchase of stock in [TopWorx,] a company they never owned or had an interest in." [DE 90 at 1747 (title capitalization removed)]. [DE 90 at 1747]. Marcum argues that neither the Plaintiffs nor the Trust were parties to the sale transaction, and as a result, cannot bring a claim that would be solely for Bonnie to bring. [*Id.* at 1749]. Further, Marcus alleges that Plaintiffs had no legal right to inherit the TopWorx stock and as such, any claim for injury would be speculative. [*Id.*]. Plaintiffs argue in reply that they satisfy standing's three requirements. [DE 93 at 1787].

The Sixth Circuit has instructed that in order to establish Article III standing, a plaintiff must demonstrate constitutional requirements that: "(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (quoting *Am. Civil Liberties Union of Ohio, Inc., v. Taft*, 385 F.3d 641, 645 (6th Cir. 1999)); *see also Speerly v. Gen. Motors, LLC*, ___ F.4th ___, 2025 WL 1775640, at *2 (6th Cir. June 27, 2025) (publication pending)( Article III

7

"requires that the plaintiff[s] have suffered an 'injury in fact,' 'trace[able]' to the defendant's actions, and 'redress[able]' by a favorable decision."). Here, Marcum's first standing argument asserts futility based on lack of a concrete and non-conjectural injury.

In *Wuliger*, the court also notes that, "[i]n addition to these constitutional requirements, a plaintiff must also satisfy three prudential standing requirements: (1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a generalized grievance shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the zone of interests regulated by the statute in question." *Wuliger*, 567 F.3d at 793 (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)). Marcum's second standing argument focuses on "the most prominent of these prudential limitations," *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1137 (6th Cir. 1986) (quoting *Allstate Ins. Co. v. Wayne Cnty.*, 760 F.2d 689, 693 (6th Cir. 1985)); that a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third parties." *Cincinnati Ins. Co. v. Reynolds Concrete Pumping, LLC*, No. 3:22-CV-143-DJH-CHL, 2022 WL 22922566, at *3 (W.D. Ky. Dec. 9, 2022) (quoting *Wuliger*, 567 F.3d at 793).

Marcum first argues that "Plaintiffs are not asserting their own legal rights but rather attempting to assert Bonnie's rights," since they "never held any stock in TopWorx." [DE 90 at 1748–49]. This is an issue of "prudential" standing. *See Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009) (describing constitutional standing's and prudential standing's distinct requirements). "Prudential" standing has three requirements: (1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a "generalized grievance" shared by a large class of citizens; and (3) in

8

statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Id*. Here, as to the first requirement, the amended complaint asserts Plaintiffs' own rights: they claim that Marcum owed a fiduciary duty directly to them as his siblings and co-beneficiaries of Bonnie's estate. [DE 81-4 at 1645]. While this claim is related to Bonnie's rights, the rights of Plaintiffs as beneficiaries of her estate are independent of Bonnie's rights. The Amended Complaint alleges that "Rob transferred the [Promissory] Notes [for the sale of the stock] to himself [as fiduciary of Bonnie's estate] from Bonnie Marcum for no or nominal consideration . . . thus secretly and clandestinely diverting assets that ultimately should have been accounted for in Bonnie Marcum's estate . . ." [*Id*. at 1643]. Thus, Plaintiffs essentially allege that Marcum took an asset of Bonnie's estate, the promissory notes owed to her for the sale of her stock, and forgave them to benefit himself and divert assets from her eventual estate. As to the second and third requirements of prudential standing, the claim is not a generalized grievance shared by a large class of citizens or a statutory claim. At this stage of the proceedings, Plaintiffs have sufficiently demonstrated prudential standing.

Next, Marcum argues that because Plaintiffs "had no legal right to inherit the TopWorx stock," they "have not suffered any injury" that is not "purely speculative." [DE 90 at 1748–49]. Plaintiffs counter with Paragraph 97 of the amended complaint, which alleges that Marcum manipulated Bonnie to take assets which were meant to be shared among the siblings. [DE 81-4 at 1645–46; *see also* DE 93 at 1787]. More specifically, as noted above, Plaintiffs claim the promissory notes owed Bonnie for the sale of stock were an asset of her estate, and that those notes were forgiven by Marcum to ultimately divert funds from her Estate before her death. Plaintiffs allege that the promissory notes from 2022 required each of Marcum's three children to pay Bonnie back for the stock over a 15-year period, and that each of these notes were guaranteed personally

9

by Marcum with a stock pledge agreement as security. [DE 81-4 at 1640]. Plaintiffs allege that the payments on the notes stopped in 2005. [*Id*. at 1641]. Plaintiffs believe that Marcum had Bonnie assign these promissory notes to him, nullifying his guarantee on the promissory notes and causing the remainder of the payments due to not be paid. [*Id*.] Plaintiffs allege Marcum had undertaken to manage Bonnie's affairs and was appointed fiduciary of Bonnie's estate pursuant to her Will executed in December 2002, and thus these actions were taken while he was acting in a fiduciary capacity. [*Id*. at 1643, 1645]. At this stage, the Court accepts that alleged injury as "concrete, particularized, and actual.'" *See Shearson*, 725 F.3d at 592.

Additionally, Marcum cites two state-court decisions for the proposition that harm to a potential beneficiary's "expectancy" does not constitute an injury for purposes of standing. [*Id.* at 1749–50]. But neither case dealt with Article III standing. At issue in the first case was whether "a payee must have physical possession of a check in order to have standing to sue when the check is paid by a collecting bank over a forged endorsement." *Winn v. First Bank of Irvington*, 581 S.W.2d 21, 22 (Ky. App. 1978). *Winn* discussed "capacity to sue" and "standing to sue" under Kentucky law. *Id.* The second noted in dicta, again under Kentucky law, that "it is debatable whether standing exists for a potential beneficiary of the grantor of a power of attorney to claim breach of fiduciary duties." *Ingram v. Cates*, 74 S.W.3d 783, 786 (Ky. App. 2002). And neither case involved alleged actions taken by a fiduciary of an estate after appointment as fiduciary but before the estate was administered. Marcum cannot show futility for lack of Article III standing with these authorities. *See Williams*, 581 F. Supp. 3d at 928.

## ii. Subject-Matter Jurisdiction

As to the administration of the estate, Marcum asserts under the "probate exception" that this Court lacks subject-matter jurisdiction, at least in part, over Plaintiffs' fiduciary-duty claim. [DE 90 at 1761–62]. Plaintiffs argue that "[t]he *Osborn* Court addressed this same argument and

10

found it to be without merit." [DE 93 at 1789]. "Under the probate exception, federal courts are prohibited from exercising jurisdiction over certain conflicts involving property subject to a state court probate proceeding." *Osborn v. Griffin*, 865 F.3d 417, 434 (6th Cir. 2017). But this rule is limited: it "only precludes federal subject matter jurisdiction when a plaintiff seeks to (1) probate a will, (2) annul a will, or (3) reach the *res* over which the State court has custody." *Carroll v. Hill*, 559 F. Supp. 3d 645, 652 (N.D. Ohio 2021), *aff'd*, 37 F.4th 1119 (6th Cir. 2022) (citing *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015)). The rule "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 312 (2006).

Notably, fiduciary-duty claims "do not necessarily fall within the scope of the probate exception" since they "seek[] *in personam* jurisdiction based upon tort liability," not *in rem* jurisdiction over a *res*. *Osborn*, 865 F.3d at 434 (quoting *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007)). Marcum cites *Carroll* for the proposition that a fiduciary-duty claim fits within the exception if it arises from "the conduct of the defendant as executor and the settlement of his accounts." 559 F. Supp. at 652 (quotation marks omitted). But Plaintiffs' claim does not arise from Marcum's administration of Bonnie's estate. Rather, they allege that Marcum "secretly divert[ed]" assets after he undertook to manage her affairs in the family business and while appointed as the fiduciary of her estate, but *before* Bonnie passed away. [DE 81-4 at 1646]. "The removal of contested assets from the decedent's estate during [her] lifetime removes them from the limited scope of the probate exception." *Osborn*, 865 F.3d at 435 (cleaned up). Therefore, the exception does not apply here.

### iii. Statute of Limitations

Marcum asserts that the fiduciary-duty claim is time-barred. [DE 90 at 1753]. Plaintiffs counter that the claim is saved by equitable tolling. [DE 93 at 1788–89]. The claim is subject to a

11

five-year limitations period. *See* KRS 413.120(6); *accord Middleton v. Sampey*, 522 S.W.3d 875, 878 (Ky. App. 2017). Because Marcum purchased TopWorx from Bonnie in 2002 and Plaintiffs did not file suit until 2021, the question of equitable tolling is determinative as the five-year limitations period for breach of fiduciary duty claims as to the purchase is long past. [*See* DE 1-1 at 447].

> When a [fiduciary-duty claim] accrues against a resident of [Kentucky], and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, the time of the continuance of the absence from the state or obstruction shall not be computed as any part of the period within which the action shall be commenced.

*See* Ky. Rev. Stat. § 413.190(2). The parties have briefed three issues under this statute: Marcum's residency, whether Marcum and Plaintiffs had a confidential relationship, and when tolling ended. The Court addresses each in turn.

First, the Court addresses Marcum's residency. *See Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 n.9 (Ky. 2010) (noting statutory estoppel did not apply because party was not a resident of Kentucky at the time the cause of action accrued under KRS 413.190); *see also 4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 820 (E.D. Ky. 2019) ("Kentucky will toll the statute of limitations . . . when a Kentucky resident is out of the state when the claim accrues, Ky. Rev. Stat. § 413.190(1)"). The original complaint identified Marcum as a Florida resident in 2021. [DE 1-1 at 445]. Marcum asserts that he "is not a resident of the Commonwealth of Kentucky" and "was not . . . during *most* of the relevant time period." [DE 90 at 1755 (emphasis added)]. Marcum appears to concede that he "moved to Florida in 2011," long after purchasing TopWorx in 2002. [*Id.*]. He suggests that "any tolling of the statute ended when he became a resident of Florida." [DE 90 at 1755]. But he presents no on-point legal authorities, and the Court can find none. Plaintiffs allege that Marcum both was a Kentucky resident before 2008 and is a Kentucky resident today. [DE 81-4 at 1639]. Plaintiffs also assert in their reply that Marcum "was a resident of

Kentucky at the time he is alleged to have breached his fiduciary duty to the siblings." [DE 93 at 1789]. What matters is Marcum's citizenship at the time Plaintiffs' claim "accrue[d]" in 2002. *See* Ky. Rev. Stat. § 413.190(2). Because Marcum does not dispute that he lived in Kentucky at the time the claim accrued, the equitable-tolling statute applies here.

Second, the Court addresses whether Marcum and Plaintiffs had a "confidential relationship." *See Osborn v. Griffin*, 865 F.3d 417, 438 (6th Cir. 2017) (discussing that that statute does not being to run until discovery when a confidential relationship exists between the parties). Under Ky. Rev. Stat. § 413.190(2), equitable tolling typically ends "when: (i) the defendant's wrongful concealment is revealed to the plaintiff; or (ii) the plaintiff 'should have discovered his cause of action by reasonable diligence.'" *Id.* (quoting *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 575 (Ky. 2009)). However, "[w]hen a confidential relationship exists between the parties . . . the [limitations period] does not begin to run until actual discovery of the fraud [or] mistake." *Id.* (second alteration in original) (quoting *Hernandez v. Daniel*, 471 S.W.2d 25, 26 (Ky. 1971)). Plaintiffs effectively concede that they could have discovered Marcum's misdeeds with reasonable diligence, but they also allege that they did not investigate because they "trusted" him and that he "acted aggressively and disparagingly if anyone in the family questioned his integrity or his management of the family business or assets." [DE 81-4 at 1645]. They therefore rely on the existence of a "confidential relationship."

Marcum argues that "there was never any fiduciary or confidential relationship between [him] and his siblings with respect to the stock." [DE 90 at 1756]. But as Plaintiffs correctly point out, [DE 93 at 1788], in previous orders, this Court has already determined otherwise:

> This case resembles *Security Trust* and *Osborn*. Plaintiffs and Marcum are siblings—a "close family relationship that would have made it difficult for Plaintiffs to question their brother[']s integrity or demand a detailed account of the brother[']s business activities." *Osborn*, 865 F.3d at 437.

13

[DE 16 at 1163; *see also* DE 28 at 1223]. In revisiting this issue, Marcum argues that *Osborn* is distinguishable because all the sibling-parties there were involved in the family business. [DE 90 at 1756]. That fact was not determinative. The Sixth Circuit held in *Osborn* that "Kentucky law excuse[d] [the p]laintiffs' failure to discover [the d]efendants' wrongful conduct" because of their "close *family* relationship." 865 F.3d at 439–40 (emphasis added). "The parties' *family* dynamics were such that [the p]laintiffs trusted their brothers implicitly, and generally deferred to their business judgment."[1] *Id.* at 439 (emphasis added). *Osborn* is still analogous in this respect.

In *Osborn* it was important that the defendant brothers had undertaken to manage their parents' affairs. *Id*. Plaintiffs allege in their proposed amendment that "Bonnie, trusted her oldest son to manage the family business and handle much of the financial affairs for his three siblings, he was nominated as fiduciary of Bonnie Marcum's estate in December 2002 . . . ." [DE 81-4, at 1645]. Plaintiffs also allege that "Marcum acted aggressively and disparagingly if anyone in the family questioned his integrity or his management of the family business or assets." [*Id.*] Plaintiffs allege that Marcum convinced Bonnie to transfer shares in TopWorx to him and his son when she was seriously ill in May 2002, and then to transfer the rest of her shares in June 2002 "just hours before she underwent emergency triple bypass heart surgery." [*Id*. at 1639-40]. Plaintiffs allege "it was fully expected—by both Bonnie and the Plaintiffs—that upon [Bonnie's] death, value attributable to her TopWorx stock would flow through her personal estate." [*Id*. at 1640]. As discussed above, Plaintiffs allege Marcum achieved this through a series of documents establishing

---

[1] Marcum has also filed an evidentiary exhibit in order to argue that Plaintiffs were actually "skeptical" or "suspicious" of him, not trusting. [*See* DE 90 at 1757–58]. At this stage, the Court must disregard Marcum's factual assertions that contradict the amended complaint's allegations. *See Royal Truck & Trailer*, 974 F.3d at 758. Likewise, because Marcum's exhibit was not "referred to in the [c]omplaint" and is not "central to the claims contained therein," *see Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008), the Court will not consider it. *Cf. Caraway v. CoreCivic of Tennessee, LLC*, 98 F.4th 679, 688 (6th Cir. 2024) (discussing Fed. R. Civ. P. 12(d)).

him as Trustee of Gift Trusts, requiring that only he sign all the documents, and establishing promissory notes that were never intended to be fully paid. [*Id.* at 1641-42].

Finally, the Court addresses the issue of when tolling ended. Marcum argues that Plaintiffs' limitations period began to run in April 2016, when Bonnie died, and Plaintiffs received an inventory of her estate. [DE 90 at 1758]. He concludes that the five-year limitations period ran in April 2021. [*Id.*]. That is when Plaintiffs filed their original complaint. [*See* DE 1-1]. An amended complaint "relates back to the date of the original pleading" if it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1). Plaintiffs assert, and Marcum does not dispute, that their amended complaint relates back to the date of the original complaint. [DE 93 at 1781]. Therefore, Plaintiffs' fiduciary-duty claim is not time-barred.

### iv.  *Duty Owed*

On the merits, Marcum asserts that he did not owe any fiduciary duty to Plaintiffs. [DE 90 at 1750–53, 1760]. In reply, Plaintiffs call Marcum's argument "erroneous." [DE 93 at 1788]. "A claim for breach of fiduciary duty requires that a plaintiff allege that '(1) the defendant owes a fiduciary duty to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff suffered damages as a result of the breach.'" *Insight Kentucky Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 546 (Ky. App. 2016) (quoting *Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 665 (E.D. Ky. 2009)).

Marcum notes that Plaintiffs "were never shareholders of TopWorx" with him and that "[a] family relationship alone will not give rise to a fiduciary duty." [DE 90 at 1750–51]. But the duty alleged in the amended complaint arises from the parties' "confidential relationship," [DE 81-4 at 1645], which is recognized above and in the Court's previous orders. "[F]iduciary duties . . . attach where . . . parties are in 'a confidential relationship' such that one party 'repos[es] a certain degree

15

of trust and confidence in' the other." *Osborn*, 865 F.3d at 445 (quoting *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 486 (Ky. 1991)). The amended complaint is analogous to *Osborn*, [DE 81-4 at 1645–46], in that Marcum "assumed responsibility for managing the family's financial affairs, and encouraged Plaintiffs to trust that [he] would fairly administer their [mother's] assets." *See* 865 F.3d at 445. Plaintiffs' allegations, which the Court accepts at this stage, show that Marcum owed a fiduciary duty to Plaintiffs not merely because they were siblings, but because of their confidential relationship. Further, the nature of the relationship and Marcum's involvement over Bonnie's affairs are issues of fact not appropriate for consideration at this stage of the case.

### b. *Below-Market Rent*

To the extent Plaintiffs' fiduciary-duty claim arises from the below-market rent paid to the trust, Marcum argues that Plaintiffs have already received full accord and satisfaction. [DE 90 at 1766]. Under Kentucky law, "[i]f a person against whom a claim is asserted proves that: (a) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim; (b) the amount of the claim was unliquidated or subject to a bona fide dispute; and (c) the claimant obtained payment of the instrument," then the claim is generally "discharged." Ky. Rev. Stat. § 355.3-311(1)–(2) (de-tabulated); *see also Estes v. McKinney*, 354 S.W.3d 144, 147 (Ky. App. 2011). According to Marcum, "[t]he proposed amended complaint and accompanying motion admit that [he] and his family have already paid the Trust, and therefore the Plaintiffs, $550,000 at the time of the TopWorx sale, to adjust for any insufficiency in the rent . . . ." [DE 90 at 1766]. This appears to be a reference to Paragraph 90 of the amended complaint, where Plaintiffs mention "[a]t first, the rent was kept so low by a supplement from an Escrow Account that was admittedly funded by the sellers of TopWorx (Rob Marcum and his immediate family)." [DE 81-4 at 1644]. But Paragraphs 90 and 91 states that the supplement "lasted for 3/12 years," and that "Marcum made sure the rent paid by Emerson was not Fair Market Value when the Escrow Account was

16

exhausted." [DE 81-4 at 1644]. Whether the payment constitutes an accord and satisfaction is an issue of fact not appropriate at this stage of the proceedings.

### B.  Motion to Exceed Page Limit

In this District, "responses may not exceed 25 pages without leave of Court." LR 7.1(d). Marcum seeks leave to exceed this limitation with his response brief. [DE 88]. The brief contains 29 substantive pages. [DE 90]. Because the brief only modestly exceeds the page limit, and because Marcum's motion is unopposed, the motion is granted.

### C.  Motions to Seal

Marcum has filed his response brief and its exhibit under seal. [DE 90]. Likewise, Plaintiffs have filed their reply brief and two enclosures under seal.[2] [DE 93]. Plaintiffs also indicate that, pending the Court's leave to amend, they intend to refile their amended complaint and include certain exhibits under seal. [*Id.* at 1787]. The parties' motions to seal meagerly assert that these docket entries contain information "designated as confidential and subject to a confidentiality agreement." [DE 89 at 1733; DE 92 at 1776]. It appears that no confidentiality agreement has been filed with the Court.

The Sixth Circuit has long recognized a "strong presumption in favor of openness" regarding court records. *Rudd Equipment Co., Inc. v. John Deere Construction & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016) (citing *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)). "Only the most compelling reasons can justify non-disclosure of judicial records." *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News–Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). Courts

---

[2] The enclosures are copies of unpublished caselaw. Plaintiffs also filed copies of unpublished caselaw with their motion. [*E.g.*, DE 81-2]. The parties are reminded that electronically available authorities, even if unpublished, should simply be cited appropriately, not filed in the record. *See* LR 7.1(h).

17

cannot seal records without "set[ting] forth specific findings and conclusions 'which justify nondisclosure to the public,'" *Id.* at 306 (quoting *Brown & Williamson*, 710 F.2d at 1176), "even if no party objects to their sealing." *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 939 (6th Cir. 2019). Furthermore, any seal "must be narrowly tailored" and "no broader than necessary." *Shane Grp.*, 825 F.3d at 305–06. Targeted redactions are generally preferred over sealing an entire document. *See Lipman v. Budish*, 974 F.3d 726, 754 (6th Cir. 2020); *Opiate Litig.*, 927 F.3d at 937; *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 377 F. Supp. 3d 779, 793 (E.D. Mich. 2019); *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:19-cv-851-BJB-CHL, 2022 WL 1814260, at *9 (W.D. Ky. Jun. 2, 2022). Parties often file two copies of protectable documents: one redacted but publicly available, the other unredacted and under seal. *See, e.g.*, *United States v. Karr*, 611 F. Supp. 3d 395, 411 (E.D. Ky. 2020); *see also United States v. Hatcher*, 698 F.3d 936, 937 (6th Cir. 2012).

As filed, Marcum's response and Plaintiffs' reply are totally sealed. These briefs certainly "are the sort of records that would help the public assess for itself the merits of [the Court's] decision[]." *See Opiate Litig.*, 927 F.3d at 939 (quotation marks omitted). Yet the parties' arguments in favor of sealing—which amount to only one sentence each—are "brief, perfunctory, and patently inadequate." *See Shane Grp.*, 825 F.3d at 306. There is a difference "between secrecy in the context of discovery, which . . . is permissible with a showing of 'good cause,' and secrecy in the context of adjudication, which is generally impermissible . . . ." *Opiate Litig.*, 927 F.3d at 938–39. The Sixth Circuit has repeatedly rejected the notion that court records may be sealed simply because the parties have deemed some contents to be confidential or sensitive. *See, e.g.*, *id.* at 306–07; *Lipman*, 974 F.3d at 753–54. The Sixth Circuit's position is also supported by the local rules. *See* LR 5.6(c) ("Reference to a stipulation that allows a party to designate certain documents

as confidential is not sufficient grounds to establish that a document, or portions thereof warrants filing under seal."). Because the parties have not identified compelling reasons to justify nondisclosure of their briefs or enclosures, the motions to seal are denied.

### IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

- Plaintiffs' motion for leave to amend [DE 81] is **GRANTED**. In accordance with their reply, [*see* DE 93 at 1787], Plaintiffs **SHALL** file a revised amended complaint within **fourteen (14) days** of this order's entry. The pleading may not differ in substance from Plaintiffs' existing proposed amended complaint [DE 81-4].

- Marcum's motion to exceed the page limit [DE 88] is **GRANTED**.

- The parties' motions to seal [DE 89; DE 92] are **DENIED**. The Clerk of Court is directed to unseal Docket Entries 90 and 93, including all attachments.

Rebecca Grady Jennings, District Judge
United States District Court

November 18, 2025